## Oberholtzer v. Hager

*Rosenberry & Moffett*, for plaintiff.
*James Caiola*, for defendant.

DANNEHOWER, J., January 3, 1950.—This case comes before the court on defendant's motion for judgment n. o. v. in a suit by a patron against a hotel owner for personal injuries received from an assault by one of defendant's servants.

Shortly after 10 p.m. on Saturday evening, August 21, 1948, plaintiff, Howard Oberholtzer, and his brother, Harry, entered the Eagleville Hotel, Eagleville, Montgomery County, Pa. They went to the dining room where they had beer and clams and watched the floor show. When the dining room closed at midnight, the brothers went into the hotel's coffee shop where food and other refreshments were served.

Defendant hotel owner, George D. Hager, employed one Richard D. Curtis as a short order cook in the coffee room. It was his duty to prepare food at a grill behind the counter, and to serve it to those customers who were seated there.

Plaintiff and his brother took places at counter stools and ordered roast beef sandwiches. Plaintiff's brother, Harry Oberholtzer, testified that after they had waited for the food for some time he kidded Curtis, telling him that he had once worked in a restaurant and was a faster cook than Curtis was. Plaintiff said that he then waved his arm at Curtis, who was facing away, and told him not to get sore because his brother was only teasing. As plaintiff finished speaking, Curtis suddenly swung around at him and cut the plaintiff's throat with a large spatula that he had been using to turn cheeseburgers.

The injury was serious. The cut extended from the left cartoid sheath to the right cartoid sheath, severing nerves, bloodvessels, and the trachea through three fourths of its circumference. Plaintiff lost large quantities of blood, was confined to the hospital for 11 days, and was unable to work for five weeks thereafter. For these injuries suit was brought against defendant.

At the trial of the case, a verdict was rendered for plaintiff in the sum of $2,655.10. Defendant contends that a compulsory nonsuit should have been granted on the theory that plaintiff's evidence shows the injury was caused by an act of violence beyond the scope of

Curtis' employment. As such, defendant contends, it was an unauthorized act for which the servant alone is answerable. However, plaintiff asserts that defendant had put Curtis in full charge of the coffee room with the authority to maintain order and protect the patrons of the hotel. It is argued that the injury was inflicted while Curtis was carrying out these duties.

We believe that the evidence shows that plaintiff cannot recover and that it was error not to grant the nonsuit. Where an injury is caused by a servant in the use of means fairly adapted to accomplish the purpose of his employment, the master is responsible. This is true, even though the act of the servant is wrongful or unauthorized. But where the act of the servant does not fairly tend to effectuate the discharge of the duty for which he is employed, the master is not liable: Guille v. Campbell, 200 Pa. 119 (1901).

There is nothing in the evidence from which it could be inferred that Curtis was trying to keep order or protect his master's patrons when plaintiff was injured. Neither plaintiff nor his witnesses testified that Curtis had admonished, warned, threatened or ordered him out of the shop. Indeed, according to their testimony, his conduct and his brother's was such that no complaint could be made of it, and that the attack was provoked by a little harmless kidding.

On the other hand, defendant's witnesses testified that the Oberholtzers had been loud, boisterous, abusive, and profane. But the only result of this conduct was that defendant's son, who helped Curtis during part of the time plaintiff and his brother were in the coffee room, and Curtis himself, asked them not to use improper language. There was no testimony which could connect the injury inflicted to the discharge of any duty. It is clear that this short-order cook was avenging a fancied personal insult and accomplishing some independent purpose of his own. Such act does not rea-

sonably and fairly tend to effectuate the duties he was employed to perform.

As a matter of fact, plaintiff's own words show that he was not injured by the undue use of force by a servant who was trying to maintain order. He said:

". . . I looked around and seen the boy was getting mad. He was standing kind of sidewise and I said, 'take it easy, don't get mad, the boy is only kidding you', and about that time, he swung around".

"Q. (by Mr. Moffett) What was he doing at the moment when you spoke to him?"

"A. He was stirring up some cheeseburgers or something. I don't know. . . . Well, he swung around, I never expected him to cut or anything, he swung around and when he swung around I didn't think nothing about it for a second, then I felt something running . . . he had cut me clear from here to here (witness indicates throat)."

Plaintiff's brother testified that the cutting took place just as he turned around and got off his stool. It happened so quickly that he did not see it occur.

Charles Buckwalter, who was in the coffee room when the cutting took place, testified that he didn't hear any improper language or warnings, and that his attention was first attracted to plaintiff when he said he had been cut. All witnesses concurred that the cutting took place suddenly, without warning, and before they realized what was happening. In short, there was no evidence to support the argument that the cutting was accomplished by a servant who was trying to maintain order—rather it supports the theory of a sudden and malicious attack. That being the case, defendant is not liable to plaintiff. "An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed": A. L. I. Restatement of the Law of Agency §235.

In Guille v. Campbell, 200 Pa. 119 (1901), the test of whether a servant is acting within the scope of his employment is said to be: (1) What purpose did the servant intend to accomplish by the act which caused the injury? (a) Was this purpose a matter of his own, or was it part of his employment?

The application of either of these tests indicates that defendant is not liable.

In Tshudy v. Hubbs Stores Corp., 310 Pa. 285 (1933), plaintiff entered defendant's store to make a purchase, and signified his intention to do so by touching the manager on the back. The latter was in a stooping position with his back toward the plaintiff, and engaged at the time in trimming lettuce with a knife. For some unexplained reason the manager half turned and raised the instrument as if to throw it at plaintiff. The knife slipped or flew out of his hand, striking plaintiff at the knee, inflicting a small wound which became infected, causing serious injury. In affirming the nonsuit entered below, the court said that the manager's raising the knife as if to throw it was clearly not within the scope of his employment.

Quoting Guille v. Campbell, supra, the court held: " 'The act of violence by which the injury was occasioned was not done in execution of the authority given, but was quite beyond it, and must be regarded as the unauthorized act of the servant; for which he himself, and not the defendants, must be answerable. Whether this action was simply careless, or whether it was malicious, it was his own, and was not incident to the authority granted.' "

The same reasoning is applicable in this case, and there can be no recovery.

And now, January 3, 1950, for the foregoing reasons, defendant's motion for judgment n. o. v. is hereby granted and judgment n. o. v. is directed to be entered.